STATE OF NEBRASKA, PLAINTIFF, v. SUPREME FOREST, WOODMEN CIRCLE, ET AL., DEFENDANTS.

FILED DECEMBER 19, 1916. No. 19761.

1. Insurance: FRATERNAL ASSOCIATIONS: STATE CONTROL. The authorities of the state, under our statute, are given such control of fraternal beneficiary associations as to require the state to see that the interests of the members of the association are not sacrificed by unauthorized usurpations of authority on the part of officers of the association. Under the circumstances in this case, this court has original jurisdiction of an action in the name of the

State v. Supreme Forest, Woodmen Circle.

state brought by the attorney general, in behalf of the insurance board, to determine the jurisdiction and powers of the contending officers of the association.

2. ——: ——: FORM OF GOVERNMENT. A fraternal beneficiary association must, under our statute, have a representative form of government, that is, the governing powers of the association shall be elected directly or indirectly by the members. The governing body in the defendant association, called the "Supreme Forest," is so elected, and corresponds to the board of directors in an ordinary corporation. It is authorized to "enact laws for its own government and for conducting the business of the order generally." Laws so enacted in harmony with the constitution of the association and statutes of the state are binding upon the association and its officers and members.

3. ——: ——: ——. The constitution of the order creates an executive council which is subordinate to the Supreme Forest. The council could not authorize a committee to conduct "the business of the order generally" without the approval of a specified number of the members of the Supreme Forest, and its attempt to do so is held invalid.

4. ——: ——: CONSTITUTION: CONSTRUCTION. When the language of the controlling writing is at some point ambiguous, the practical construction by the parties themselves must control.

ORIGINAL PROCEEDING by the State against the Supreme Forest, Woodman Circle, and others. Application for injunction. *Injunction allowed.*

*Willis E. Reed, Attorney General,* for plaintiff.

*John J. Sullivan, Arthur F. Mullen, Stout, Rose & Wells, Brogan & Raymond, Jefferis & Tunison* and *Frank H. Gaines, contra.*

SEDGWICK, J.

The Supreme Forest, Woodmen Circle, is a fraternal beneficiary association with a large membership throughout the United States. The legislative body of the order is known as the "Supreme Forest," and the constitution provides that it shall have original and appellate jurisdiction in all matters pertaining to the general welfare of the order. The constitution also provides for a supreme executive council, and this council is given

all power and authority of the Supreme Forest when that body is not in session, except as specified in section 30 of the constitution. The chief officer of the Supreme Forest is called the supreme guardian, and the constitution provides that the supreme guardian shall also be a member of the supreme executive council. The Supreme Forest meets biennially, and at its last meeting elected the defendant Emma B. Manchester supreme guardian. She assumes, and now insists, that under the constitution she has the power and duty to "administer the organization or field work of the society." This appears to include the appointment of financial and other agents and attorneys, and other important matters. The supreme executive council appointed a committee of three, of which Mrs. Manchester was one, to take charge of and control this "organization or field work." The defendants Dora Alexander and Mary E. LaRocca, the other two members of the committee, being a majority thereof, assumed to direct the "organization or field work," and so a conflict arose between Mrs. Manchester and these two members of the committee, and it seems to be conceded that this conflict so disorganized the business as to endanger the existence of the association. The attorney general, in behalf of the insurance board of the state, brought this action in *quo warranto* in this court to determine the jurisdiction and powers of these respective authorities, making the association and these three officers, the members of the supreme executive council, and the members of the board of supreme managers, defendants. No brief has been filed on behalf of the state. Mrs. Manchester, as supreme guardian, by her attorneys, represents one side of the controversy, and also briefs have been filed on behalf of the other defendants as representing the other side of the controversy.

1. It is suggested that the court should not entertain jurisdiction of the action because the state is not interested in the controversy, and therefore the insurance

board and the attorney general cannot maintain such proceedings. This question is not much discussed in the briefs, and, without entering into a discussion of the matter, we have concluded that the authorities of the state, under our statute, are given such control of these beneficiary associations as to require the state to see that the interests of the members of the association are not sacrificed by unauthorized usurpations of authority on the part of the officers of the association.

2. There is more or less ambiguity and uncertainty in the articles of association and the by-laws, and, even if we assume that all parties have acted in good faith, it is apparent that these uncertainties have led to this destructive conflict of authority. The constitution provides that the supreme guardian shall appoint deputy supreme guardians and instruct them in their duties. The contending parties do not agree as to the powers and duties of these deputy supreme guardians so appointed. If under the constitution and the laws of the association the supreme guardian and these deputy supreme guardians are "to administer organization or field work of the society," then the contention of Mrs. Manchester as supreme guardian must be sustained; but if the authority of the supreme guardian and the deputy supreme guardians is limited to the more formal duties of the supreme guardian, and does not include the "organization or field work," then the contention of Mrs. Alexander and Mrs. LaRocca, as a majority of the committee appointed by the executive council, must be sustained.

The statute provides that such association shall have a representative form of government, that is, the governing powers of the association shall be elected directly or indirectly by the members, and it appears from its constitution that the Supreme Forest is so elected, and is the governing power of the association. The Supreme Forest is the governing body, and corresponds to the board of directors in an ordinary corporation. The executive council is a subordinate body with limited pre-

scribed powers and duties, and connot be considered
in any sense as analogous to the controlling directors of
a corporation.    The Supreme Forest "shall enact laws
for. its own government and for conducting the business
of the order generally."    The regulation of the general
business of the order, then, is to be by legislation, and
the executive council can legislate only as provided in
the constitution.    Manifestly the executive council can
have no power that shall conflict with the laws so en-
acted by the Supreme Forest.    By the constitution it is
provided that the supreme executive council shall have
a limited legislative power.    In order to exercise such
power, it must be determined by unanimous vote of all
the members present that an emergency exists, and no
legislation shall be enacted unless the same shall receive
the affirmative vote of at least seven members of the
council, and no legislation of theirs shall be enforced
until it is approved in writing by two-thirds of the mem-
bers of the Supreme Forest other than members of the
supreme executive council.    In the appointment of this
committee the executive council did not comply with
these requirements.    The council therefore could not
clothe this committee with authority to "conduct the
business of the order generally."    That power is in the
Supreme Forest, and must be exercised by enacting laws;
that is, by legislation.    The executive council can legis-
late only in the specific manner stated in the constitution.
It follows that the committee could not take control
of the general business of the order.

A deputy is "one authorized by an officer to exercise
the office or right which the officer possesses for and in
place of the latter."    This brings us back to the question
we begin with: Is the supreme guardian authorized to
organize groves, or local branches of the order, and to
generally administer the "organization or field work?"
If so, she might appoint deputy supreme guardians to
perform these duties.    It is her duty to preside at all
meetings of the Supreme Forest and of the supreme ex-

ecutive council and enforce the laws of the order. "She shall appoint all committees not otherwise' provided for, and have general supervision over the affairs of the order."

There is no express or definite provision in the constitution and laws of the association as to who "shall generally administer the organization or field work." The most that can be said in favor of the contention that the executive council has this power and duty is that the language of the constitution and laws is ambiguous upon that point. Under such circumstances, the practical construction by the parties themselves must control. For many years the supreme guardian has performed these duties, and all parties have acquiesced in this construction of the constitution and laws without question.

We conclude that, until the Supreme Forest takes action, this construction must control. There will be a meeting of the Supreme Forest soon, and it is to be hoped that such definite and unequivocal action will be taken as to avoid such conditions in the future. In the meantime the supreme council and the committee, of which the defendants Dora Alexander and Mary E. La-Rocca are members, are enjoined from interfering with Emma B. Manchester, the supreme guardian, and her deputies regularly appointed in organizing groves, or local branches of the order, and generally administering the organization or field work of the association.

INJUNCTION ALLOWED.

ROSE, J., not sitting.

FAWCETT, J., dissenting.

The resolution of the executive council, which is the crux of this case, was not legislation, but simply a declaration by the executive council of the manner in which the business affairs of the corporation, over which the executive council had general control, should thereafter be managed. It seems to me to be a strained construction of the action of the Supreme Forest, or of the purpose of the elected delegates and other members of

the Supreme Forest in taking such action, to say that the Supreme Forest, by article VI of its amended and substituted articles of incorporation, adopted May 22, 1907, would enact that "the supreme executive council shall have the general control and management of the business affairs of this corporation except during the session of the Supreme Forest," unless the Supreme Forest intended to place in the hands and under the general control of the supreme executive council the management of all the business affairs of the corporation. That the Supreme Forest intended that the supreme executive council should have all the power of the Supreme Forest itself in the general control and management of the business affairs of the corporation is shown by the closing words, "except during the session of the Supreme Forest." It seems to me that it logically follows that the Supreme Forest, which, when in session, has undoubted exclusive, general control and management of the business of the corporation, realized that when the Supreme Forest was not in session there should be some body, composed of more than one person, which should be invested with the powers possessed by the Supreme Forest when in session. To "control" means: "To exercise control over; hold in restraint or check; subject to authority; direct; regulate; govern; dominate: To have superior force or authority over; overpower." To "manage" means: "To control or direct by administrative ability; regulate or administer; have the guidance or direction of: To control, restrain, or lead by keeping in a desired state or condition: * * * To arrange, fashion, contrive, effect, or carry out by skill or art; carry on or along; bring about." Century Dictionary. The Supreme Forest was undoubtedly made up of educated and intelligent delegates, convened to represent a great organization. They must be presumed to have meant just what the language which they employed imports. It thereby wisely gave to the supreme executive council general control and management of all the busi-

ness affairs of the corporation at all times except during the sessions of the Supreme Forest itself. It seems to me that it cannot be doubted that, in giving the supreme executive council general control and management of all the business affairs of the corporation, it thereby made the supreme executive council supreme in the control and management of the business affairs of the corporation, which included the general control and direction of all of the officers and representatives of the corporation through whom the business affairs of the corporation are managed, which would, clearly, include the supreme guardian. Any other construction would be to hold that the Supreme Forest intended to give to the supreme guardian sole and exclusive control of all the important business of the corporation, involving the appointment of field agents, the most important membership producing branch of the business of the corporation, and the arbitrary fixing of their compensation, involving the expenditure of thousands upon thousands of dollars of the corporation's money, and leave this individual official of the corporation in the control and management of substantially all the business affairs of the corporation, independent of and free from the supervision and direction of the supreme executive council, to which council the Supreme Forest gave the general control and management of the business affairs of the corporation, except during the session of the Supreme Forest itself. Clearly, it intended that during the intervals between sessions of the Supreme Forest the supreme executive council should be supreme in its general control and management of every branch of the business affairs of the corporation. The resolution adopted by the supreme executive council was a mere order in the course of the management of the business affairs of the corporation, and not a matter of legislation. It did not create an emergency requiring the unanimous vote of all members of the council present or the submission to referendum vote of the members of the Supreme Forest. Hence, it is immaterial that

one member of the supreme executive council protested that the resolution was in conflict with the laws of the order, and refused to participate in the adoption of the same. If it was simply an act or order in the course of the management of the business affairs of the corporation, and not legislation, the order could be made by the vote of a majority of the supreme executive council, and would be binding upon every official of the corporation charged with the performance of any part of the business affairs of the corporation. In other words, I hold that the supreme executive council, as to the general control and management of all the business affairs of the corporation, is, when the Supreme Forest is not in session, supreme and absolute; and, if any officer or agent of the corporation refuses to obey the directions of the supreme executive council, she or he immediately becomes subject to removal by such council.

The fact that the Supreme Forest created certain offices, including that of supreme guardian, and defined their duties, cannot be construed as a grant to such officers of powers in the management of the business affairs of the corporation, independent of and superior to the supreme executive council, to which, its very name and the language employed clearly show, the Supreme Forest intended to give all the powers in the control and management of the business of the corporation, during its vacation, which it had itself when in session.

The fact that the supreme executive council had, prior to the time now complained of, never deemed it necessary to give directions to the supreme guardian, cannot be construed to mean that it had at all times prior thereto recognized or acknowledged the supreme guardian as being independent of, and not subject to, the direction and control of the supreme executive council.

In view of what I have said, my judgment is that the restraining order granted herein should be discharged and relator's petition dismissed.